**STATE of Ohio, Appellee,**

v.

**ROHRBAUGH, Appellant.**

[Cite as *State v. Rohrbaugh,* 178 Ohio App.3d 211, 2008-Ohio-4781.]

Court of Appeals of Ohio,
Third District, Logan County.

No. 8–07–28.

Decided Sept. 22, 2008.

212

Gerald L. Heaton, Logan County Prosecuting Attorney, and Eric S. Stewart, Chief Assistant Prosecuting Attorney, for appellee.

Marc S. Triplett, for appellant.

ROGERS, Judge.

{¶ 1} Defendant-appellant, John Rohrbaugh, appeals the judgment of conviction and sentence of the Logan County Court of Common Pleas that, in part,

ordered him to pay restitution in conjunction with his conviction for receiving stolen property relative to a theft from First Check Cash Advance. On appeal, Rohrbaugh claims that the trial court wrongly attributed damages to him beyond the scope of his crime when calculating restitution. Based upon the following, Rohrbaugh's guilty plea should be vacated and the matter remanded to the trial court for further proceedings consistent with this opinion.

{¶ 2} The charges pertinent to this appeal arose out of the theft of over $16,000 in cash, checks, and money orders from the First Check Cash Advance Store in Bellefontaine, Ohio. In February 2007, someone broke into the store in the middle of the night. A witness told law enforcement that he had seen a male suspect leave the scene in a dark-colored vehicle. Based on evidence found at the scene, detectives suspected that the perpetrator had inside knowledge about the business prior to committing the offense. The investigation led the detectives to Rohrbaugh, whose girlfriend, Heather Pulfer, worked at the store.

{¶ 3} The police arrested Rohrbaugh and found $1,176 on his person and $5,227 in cash inside his vehicle, along with money wrappers that identified the cash in the vehicle as money that had been taken from First Check Cash Advance. Rohrbaugh claimed that Pulfer had given him the $5,227 and that the $1,176 was money he received from cashing his paycheck. Police recovered the $5,227 and returned it to First Check Cash Advance and held the $1,176 in evidence.

{¶ 4} In March 2007, the Logan County Grand Jury indicted Rohrbaugh on the following: Count One—breaking and entering in violation of R.C. 2911.13(A), a felony of the fifth degree; Count Two—theft in violation of R.C. 2913.02(A)(1), a felony of the fourth degree; Count Three—theft from the elderly or disabled in violation of R.C. 2913.02(A)(1); Count Four—breaking and entering in violation of R.C. 2911.13(A); Counts Five, Six, Seven—three misdemeanor counts of theft in violation of R.C. 2913.02(A)(1); and Count Eight—possession of cocaine in violation of R.C. 2925.11(A), a felony of the fifth degree. Only Counts One and Two are relative to the break-in and theft at First Check Cash Advance; Counts Three through Eight pertain to unrelated incidents.

{¶ 5} Subsequently, Rohrbaugh entered a plea of not guilty to all of the counts in the indictment.

{¶ 6} In July 2007, the state moved to amend the indictment to change Count One from breaking and entering in violation R.C. 2911.13(A), to receiving stolen property in violation of R.C. 2913.51, a felony of the fifth degree, and included language alleging that the value of the property was more than $500 but less than $5,000. As part of a plea agreement, Rohrbaugh then entered a guilty plea to the amended count of receiving stolen property in violation of R.C. 2913.51, and to

the count of possession of drugs in violation of R.C. 2925.11(A), also a felony of the fifth degree. The remaining counts in the indictment were dismissed.

{¶ 7} Thereafter, the trial court held a sentencing hearing and heard testimony from Jason Stonerock, a representative of First Check Cash Advance, concerning the amount of losses the business suffered as a result of the break-in and theft. Stonerock testified that the total losses were $16,374.79, including cash, checks, and money orders, plus $179.70 to repair the broken glass in the front door and a $5 stop payment fee. After subtracting the $5,227 in cash recovered from Rohrbaugh and the value of some of the checks that were reissued, Stonerock testified that the store's remaining net loss was $4,733.81, including the cost of repairs.

{¶ 8} Rohrbaugh then addressed the trial court and apologized for his actions, but claimed that he was guilty only of receiving the stolen property and that someone else had committed the break-in and theft. Rohrbaugh's attorney objected to the matter of restitution at the hearing, stating, "With respect to the money that was in the car, it's Mr. Rohrbaugh's position that that is the money that he received, that is the money that he is guilty of receiving, and it is Mr. Rohrbaugh's position that there should not be any restitution beyond those funds for the reasons that I've outlined; that he was not involved in the breaking and entering * * *."

{¶ 9} In August 2007, the trial court sentenced Rohrbaugh to an 11–month prison term on each of the two remaining counts, receiving stolen property and possession of cocaine. The trial court ordered Rohrbaugh to serve the sentences concurrently, with credit for the 188 days already served.[1] The trial court also ordered Rohrbaugh to pay restitution to First Check Cash Advance in the amount of $4,733.81.[2]

{¶ 10} It is from this judgment that Rohrbaugh appeals,[3] presenting the following assignment of error for our review.

---

1. The trial judge noted that Rohrbaugh was subject to community control in Franklin County at the time of his offenses. The trial court stated that if Franklin County revoked his community control, this current sentence would be consecutive to any sentence imposed by Franklin County. The trial court also informed Rohrbaugh that he would be subject to a three-year period of post-release control.

2. The state and Rohrbaugh had previously agreed that the $1,176 found on his person represented the proceeds from his paycheck; that Rohrbaugh would be permitted to retain one half of that money; and that the other half would be allocated as directed by the trial court. The trial court stated that this half of those funds, $588, should be applied to the $4,733.81 restitution, reducing the balance that Rohrbaugh was ordered to pay the victim to $4,145.81.

3. The original sentencing entry was filed on August 6, 2007. On August 21, 2007, this judgment entry was amended to correct a typographical error. Rohrbaugh appealed from the

The trial court erred when it ordered appellant to make restitution in the amount of $4,733.81.

{¶ 11} On appeal, Rohrbaugh claims that the trial court made several errors in determining the amount of restitution he should pay. Rohrbaugh maintains that the trial court did not determine his ability to pay restitution; that it failed to limit restitution to the amount of damages caused by the offense; and that it should have apportioned the amount of restitution between all of the individuals allegedly involved in the crime

{¶ 12} Initially, before we review this assignment of error, we must address the issue of whether Rohrbaugh pleaded to a properly amended indictment, with respect to the receiving-stolen-property count. On July 3, 2007,[4] Rohrbaugh changed his plea of not guilty to a plea of guilty to a reduced count.

{¶ 13} In the judgment entry/change of plea, the trial court notes that the state moved to amend the indictment to receiving stolen property in violation of R.C. 2913.51(A), a felony of the fifth degree. The language of the amendment itself does not specify what count is being amended. However, later in the judgment entry/change of plea, after the trial court has informed Rohrbaugh of the rights he is waiving by pleading, the trial court refers to the receiving-stolen-property count as Count One.

{¶ 14} Rohrbaugh entered a guilty plea to Count One, receiving stolen property, and Count Eight, possession of drugs. The trial court accepted the plea and found Rohrbaugh guilty. All remaining charges were dismissed.

{¶ 15} To determine whether the amendment of the indictment was proper, we first turn to a defendant's right to an indictment by a grand jury. The Ohio Constitution provides that "no person shall be held to answer for a capital, or otherwise infamous, crime, unless on presentment or indictment of a grand jury." Section 10, Article I, Ohio Constitution.

> The material and essential facts constituting an offense are found by the presentment of the grand jury; and if one of the vital and material elements identifying and characterizing the crime has been omitted from the indictment such defective indictment is insufficient to charge an offense, and cannot be cured by the court, as such a procedure would not only violate the constitutional rights of the accused, but would allow the court to convict him on an indictment essentially different from that found by the grand jury.

---

amended judgment entry on September 20, 2007. In October 2007, this court dismissed this untimely appeal from the nunc pro tunc entry for lack of jurisdiction. Rohrbaugh subsequently filed a motion for leave to file a delayed appeal, which this court granted in January 2008.

4. This court was not provided with a transcript of the change-of-plea hearing.

*State v. Colon,* 118 Ohio St.3d 26, 2008-Ohio-1624, 885 N.E.2d 917, at ¶ 17; *Harris v. State* (1932), 125 Ohio St. 257, 264, 181 N.E. 104.

{¶ 16} Additionally, Crim.R. 7(D) provides the proper procedure for amendment of an indictment, including when an indictment can be amended without additional involvement of the grand jury, as follows:

> The court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, *provided no change is made in the name or identity of the crime charged.* If any amendment is made to the substance of the indictment, information, or complaint, or to cure a variance between the indictment, information, or complaint and the proof, the defendant is entitled to a discharge of the jury on the defendant's motion, if a jury has been impaneled, and to a reasonable continuance, unless it clearly appears from the whole proceedings that the defendant has not been misled or prejudiced by the defect or variance in respect to which the amendment is made, or that the defendant's rights will be fully protected by proceeding with the trial, or by a postponement thereof to a later day with the same or another jury. Where a jury is discharged under this division, jeopardy shall not attach to the offense charged in the amended indictment, information, or complaint. No action of the court in refusing a continuance or postponement under this division is reviewable except after motion to grant a new trial therefore is refused by the trial court, and no appeal based upon such action of the court shall be sustained nor reversal had unless, from consideration of the whole proceedings, the reviewing court finds that a failure of justice resulted.

(Emphasis added.)

{¶ 17} "An amendment to the indictment that changes the name or identity of the crime is unlawful whether or not the defendant was granted a continuance to prepare for trial; further, a defendant need not demonstrate that he suffered any prejudice as a result of the forbidden amendment." *State v. Fairbanks,* 172 Ohio App.3d 766, 2007-Ohio-4117, 876 N.E.2d 1293, ¶ 17, citing *Middletown v. Blevins* (1987), 35 Ohio App.3d 65, 67, 519 N.E.2d 846. The court in Fairbanks continued, finding that "[a] trial court commits reversible error when it permits an amendment that changes the name or identity of the crime charged." Id. at ¶ 17, citing *State v. Kittle,* 4th Dist. No. 04CA41, 2005-Ohio-3198, 2005 WL 1491997, at ¶ 12; *State v. Headley* (1983), 6 Ohio St.3d 475, 478–479, 6 OBR 526, 453 N.E.2d 716.

{¶ 18} Finally, this court has previously held that where "two offenses contain different elements" requiring independent proof, the identity of the crime has

been changed. *State v. Dukes*, 3d Dist. Nos. 1–02–64, 1–02–92, 1–02–93, 2003-Ohio-2386, 2003 WL 21057285, ¶ 10.

{¶ 19} In the present case, Rohrbaugh was initially indicted for breaking and entering in violation of R.C. 2911.13(A), which provides: "No person by force, stealth, or deception, shall trespass in an unoccupied structure, with purpose to commit therein any theft offense, as defined in section 2913.01 of the Revised Code, or any felony." This count was amended to receiving stolen property in violation of R.C. 2913.51, which provides: "No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense." Not more than a cursory analysis is required to determine that these two counts contain different elements, requiring independent proof.

{¶ 20} In the present case, we note that Rohrbaugh pleaded guilty to the counts in the defective indictment. Rohrbaugh did not raise any objection to the validity of the indictment prior to pleading guilty. Where a defendant fails to object to the form of the indictment before trial as required by Crim.R. 12(C), he waives all but plain error. *State v. Frazier* (1995), 73 Ohio St.3d 323, 332, 652 N.E.2d 1000; *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215.[5]

{¶ 21} Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." *State v. Barnes* (2002), 94 Ohio St.3d 21, 759 N.E.2d 1240. The Ohio Supreme Court, in *Barnes*, articulated a three-part test for the finding of plain error.

First, there must be an error, *i.e.*, a deviation from a legal rule. Second, the error must be plain. To be "plain" within the meaning of Crim.R. 52(B), an error must be an "obvious" defect in the trial proceedings. Third, the error must have affected "substantial rights." We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial.

(Citations omitted.) *Barnes*, 94 Ohio St.3d at 27, 759 N.E.2d 1240.

{¶ 22} Thus, "[o]nly extraordinary circumstances and the prevention of a miscarriage of justice warrant a finding of plain error." *State v. Brown*, 3d Dist. No. 8–02–09, 2002-Ohio-4755, 2002 WL 31026982, citing *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, at paragraph three of the syllabus.

---

5. We note that these cases were decided under a prior version of Crim.R. 12, citing specifically Crim.R. 12(B)(2). However, Crim.R. 12(C)(2) now contains a substantially similar provision.

{¶ 23} In the present case, we find that the improper amendment of the indictment rises to the level of an obvious defect. Moreover, we believe that Rohrbaugh had a constitutional right to be indicted by the grand jury. That right was violated by the amendment to the indictment, changing Count One of breaking and entering to the completely different offense of receiving stolen property. As stated by the United States Supreme Court:

> To allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure. For a defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him.

*Russell v. United States* (1962), 369 U.S. 749, 770, 82 S.Ct. 1038, 8 L.Ed.2d 240.

{¶ 24} Finally, we note that the judgment entry/change of plea contains no waiver of Rohrbaugh's right to be properly indicted by the grand jury on the receiving-stolen-property count. Just as a defendant can waive his constitutional rights under Crim.R. 11, a defendant may waive his right to a grand jury indictment. Moreover, we recognize that, had Rohrbaugh pleaded to a bill of information, instead of to an amended indictment, he would have waived his right to be indicted by the grand jury. However, we find no evidence of a waiver in the present case.

{¶ 25} Accordingly, Rohrbaugh's guilty plea should be vacated and the matter remanded to the trial court for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

SHAW, P.J., and WILLAMOWSKI, J., concur.